```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
FATIMA MONTALVO,                                                :
                                                                :
                              Plaintiff,                        :
                                                                :         **MEMORANDUM AND ORDER**
              -against-                                         :         08-CV-2176 (DLI)
                                                                :
                                                                :
MICHAEL J. ASTRUE,                                              :
Commissioner of Social Security,                                :
                                                                :
                              Defendant.                        :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Fatima Montalvo filed an application for disability insurance benefits under the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., on May 8, 2006. Plaintiff's application was denied initially and on reconsideration. After holding a hearing on August 20, 2007 (the "hearing"), an Administrative Law Judge ("ALJ") concluded that plaintiff was not disabled within the meaning of the Act. On April 5, 2008, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action seeking judicial review of the denial of benefits. The Commissioner now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. Plaintiff cross-moves for judgment on the pleadings, seeking reversal of the ALJ's decision and asking the court to grant her application for disability insurance benefits.

For the reasons set forth more fully below, the Commissioner's motion is granted and plaintiff's cross-motion for judgment on the pleadings is denied.

## BACKGROUND

A.   **Non-medical and Testimonial Evidence**

Plaintiff was born on November 24, 1948 in the Dominican Republic, where she attended high school.  (Administrative Record ("A.R.") 392.)  After receiving her GED in the United States, plaintiff worked from 1973 through 2005 as a purchasing agent of supplies at Elmhurst Hospital in Queens, New York.  (A.R. 41–46, 78.)  At the hearing, when asked to describe her responsibilities at this job, plaintiff testified that she spent most of the day sitting at the computer, occasionally standing to use the copy or fax machine.  (A.R. 394-95.)  She further testified that the heaviest weight she had to lift while on the job was "maybe ten pounds."  (A.R. 394.)  On September 26, 2005, plaintiff injured her back after she tripped over a water hose outside of Elmhurst Hospital.  (A.R. 164.)  Plaintiff stopped working and applied for and received workers' compensation benefits.  (A.R. 32, 392.)

Plaintiff applied for social security disability insurance benefits on May 8, 2006.  (A.R. 12.)  In her application, plaintiff stated that, due to injuries suffered during her fall, she could no longer sit, stand, lift, carry, or walk for more than a half-hour at a time, respectively.  (A.R. 41.)  She also indicated that she has difficulty sleeping, standing, showering and putting on pants because of pain in her legs.  (A.R. 59, 405–06.)  At the hearing, plaintiff testified that she is only able to lift five pounds and, if attempting to lift an object from the floor, must crawl to stand up. (A.R. 402.) Finally, she indicated that she can stand and walk for twenty-minutes, can sit for "maybe an hour" as long as she moves her leg to relieve pressure, and can walk no more than two blocks without experiencing pain and limping.  (A.R. 402–404.)

With respect to her daily routine, plaintiff testified that after waking, she generally washes, makes breakfast, prays, straightens her bed, makes lunch, reads, watches television, makes dinner and goes to sleep. (A.R. 58, 61, 67.) She states that she is no longer able to dance or walk for exercise and that she has to be cautious in the shower not to fall due to pain and weakness in her legs. (A.R. 61–62, 405.) Plaintiff is assisted by her husband and son with cleaning, cooking, and shopping and attends church on Sundays. (A.R. 58–62.)

**B.     Medical Evidence**

    **1.     Treating Physicians**

Dr. William Gibbs is plaintiff's primary treating physician and has been treating her since before the time of the accident. After plaintiff's injury in 2005, Dr. Gibbs treated her for her back injuries and other ailments, and ordered a number of x-rays showing that she suffered from a degenerative disc disease in the lower back. (A.R. 164–66.) The x-rays showed normal curve in the spine and normal joints at the base of the spine, but no evidence of fracture or dislocation. (*Id.*) On October 3, 2005, Dr. Gibbs also ordered a magnetic resonance image ("MRI") of plaintiff's lumbar spine, which revealed degeneration of the disc substance, with bulging at the lower back level, a suggestion of a right disc herniation and joint degeneration. (A.R. 168-69.)

After the onset of her alleged disability, plaintiff also was examined and treated by Dr. Syed Jalal, a neurologist at the New York Medical and Diagnostic Center. (A.R. 267.) Plaintiff visited Dr. Jalal on December 30, 2005, complaining of pain from her neck to her legs and feet, as well as aggravated symptoms when sitting for more than 45 minutes, standing for more than 20 minutes, walking for more than 20 minutes, bending down to tie a shoelace, walking up and down the stairs, and doing household chores. (A.R. 268.) Dr. Jalal noted that plaintiff did not appear to

3

be in acute distress. Even so, he found she had a stiff neck as well as tenderness in the shoulder and elbow area, and lower back, upper pelvis, and disc lesions. (A.R. 268-69.) He further noted that plaintiff suffered from cervical lesions, possible back nerve damage, and lower back disc herniation and bulging. (*Id*.) Dr. Jalal also examined plaintiff on several occasions during 2006. Plaintiff came to each of these visits with similar complaints, although some symptoms improved over time. (A.R. 218-21, 226, 235-36, 244-45, 260-61, 361, 363.) Dr. Jalal's last impression of plaintiff, on June 30, 2006, included possible cervical and lumbosacral radiculopathies as well as disc herniation and bulging. (A.R. 362.)

During the same time period, plaintiff saw numerous other physicians from the New York Medical and Diagnostic Center, including Dr. Neil Morgenstern, Dr. Kautilya Puri, and Dr. Jacob Sadigh. Dr. Morgenstern examined plaintiff on December 14, 2005 and February 10, 2006, at which time he found her to be partially disabled, suffering from lower back tenderness. (A.R. 241–42, 282–84.) Additionally, he found that plaintiff had a positive straight leg test, and diagnosed her with lumbar spine disc herniation and bulge. (A.R. 242.)

Dr. Sadigh, a chiropractor, examined plaintiff on November 5, 2005 and diagnosed her with lumbar disc syndrome, lumbar radiculitis, lumbosacral sprain/strain, segmental dysfunctions and low back pain. (A.R. 301.)

Dr. Puri examined plaintiff on July 5, 2006, and diagnosed her with diabetes mellitus, diabetic neuropathy, glaucoma, diabetic retinopathy, high blood pressure, high cholesterol, low back pain and radiculopathy. (A.R. 320.) Dr. Puri's report stated that plaintiff was able to rise from a chair without difficulty, did not need help changing for the examination, and was able to get on and off the exam table without any difficulty. (A.R. 318.) Furthermore, the report

4

indicates that she did not appear to be in acute distress and did not use any assistive device. (*Id.*) Plaintiff's cervical spine showed full flexion, and the lumbar spine had decreased normal flexion and extension. (A.R. 319.) Dr. Puri recommended that plaintiff not lift any heavy weight. (A.R. 321.)

On August 11, and September 8, 2006, Dr. Panagiotis Zenetos, an orthopedic surgeon at Wyckoff Heights Medical Center, also examined plaintiff. (A.R. 348-49, 344-45.) Plaintiff complained of pain in her neck, back, right buttock, right knee, and right foot. (A.R. 348.) Dr. Zenetos found that plaintiff had limited range of motion in her lower back, and suffered from tenderness in the neck, left upper and lower back, and right buttock. (A.R. 349.) His overall impression was of spinal nerve damage. (*Id.*)

Dr. Zenetos performed a discogram of plaintiff's lower spine on November 3, 2006. (A.R. 342-43.) The discogram revealed that plaintiff had multiple disc tears in her lower back. (A.R. 343.) Additionally, he examined plaintiff on December 28, 2006, and July 11, 2007. (A.R. 344-45, 369-70) At both visits, Dr. Zenetos' findings were similar to earlier examinations. (*Id.*) On August 24, 2007, Dr. Zenetos performed a discoscopic discectomy,[1] which plaintiff tolerated well as evidenced by the fact that she was brought into the recovery room in "stable condition without any significant leg pain or weakness." (A.R. 376–77.)

While seeing these other physicians, plaintiff continued to seek treatment from Dr. Gibbs. He examined her on numerous occasions between October 2005 and August 14, 2007, and at all times determined that plaintiff was "disabled for her job description." (A.R. 159–161, 304.) On

---

[1] Merriam-Webster's Medical Dictionary defines "discectomy" as the "surgical removal of an intervertebral disk." *Discectomy*, MERRIAM-WEBSTER'S MED. DICTIONARY, *available at* http://www.merriam-webster.com/medical/disectomy (last visited on March 16, 2010). Although the procedure was performed subsequent to the hearing, it was considered by the ALJ in making his determination that plaintiff was not disabled. (A.R. 410–11.)

5

August 14, 2007, Dr. Gibbs performed a physical capacities evaluation, in which he reported that plaintiff can sit for only one hour and cannot stand or walk for even an hour in one stretch of time. (A.R. 368) However, during an eight-hour workday, he found that plaintiff would be capable of sitting for six hours, standing for two hours and walking for one hour. (*Id.*) He also found that plaintiff can lift five pounds frequently and six to ten pounds occasionally, but never lift anything over ten pounds. (*Id.*)

  2.  **Consulting Physician – Dr. Frank M. Hudak**

On March 22, 2006, Dr. Frank M. Hudak, an orthopedist, examined plaintiff at the request of the Worker's Compensation Board. Dr. Hudak reviewed the medical findings of Dr. Jalal, Dr. Sadigh, and Dr. Morgenstern, and found that the plaintiff had "no objective findings . . . to confirm any disability." (A.R. 183.) However, he did find that plaintiff "has continuous subjective as well as objective findings compatible with a diagnosis of lumbosacral sprain, with bilateral lumbosacral radiculopathy." (*Id.*) He reported that plaintiff can return to work in sedentary position with the ability to stand and sit as necessary, and recommended no repetitive bending at the waist or lifting more than twenty pounds. (*Id.*)

**C.**  **Vocational Evidence**

Vocational expert ("VE") Andrew Pasternak testified at plaintiff's hearing that, although plaintiff's previous employment as a purchasing agent was classified as involving a light[2] level of exertion by the Dictionary of Occupational Titles, plaintiff actually performed the job in a

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, but requires a good deal of walking or standing, or involves sitting most of the time with some pushing or pulling of arm or leg controls. *See* 20 C.F.R. § 404.1567(b).

sedentary[3] manner. (A.R. 395–98, 408–10.) The VE also testified that plaintiff's experience as a purchasing agent equipped her with transferable skills at a sedentary level including the ability to use a computer, telemarketing, and general clerical skills. (A.R. 397–98.)

According to the VE, a claimant of plaintiff's age, education and work history would be able to perform plaintiff's previous work, assuming that she could (1) sit for six hours, stand for two hours, walk one hour, and had the ability to alternate between sitting and standing; (2) occasionally lift up to ten pounds and frequently lift five pounds; and (3) occasionally bend, squat, crawl, and climb. (A.R. 408-09.) However, if the claimant was consistently unable to complete an eight-hour workday, claimant would not be able to perform plaintiff's past relevant work and would not be able to find other sustainable employment. (A.R. 409-10.)

## DISCUSSION

**A.** **Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court reviewing the final determination of the Commissioner must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human*

---

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *See* 20 C.F.R. §404.1567(a).

*Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJ's, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings, even if the claimant is represented by counsel." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (internal quotations omitted).

**B.     Determining Disability**

To receive disability benefits, plaintiff must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Plaintiff establishes disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Plaintiff bears the initial burden of proof on disability

status and is required to demonstrate that status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether plaintiff is disabled under the Act as set forth in 20 C.F.R. § 416.920. First, plaintiff is not disabled if she is working and performing "substantial gainful activity." 20 C.F.R. § 416.920(b). Second, the ALJ considers whether plaintiff has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 416.920(c). Third, the ALJ will find plaintiff disabled if her impairment meets or equals an impairment listed in Appendix 1. 20 C.F.R. § 416.920(d). If plaintiff does not have a listed impairment, the ALJ makes a finding about plaintiff's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 416.920(e). In the fourth step, plaintiff is not disabled if she is able to perform "past relevant work." 20 C.F.R. § 416.920(e). Finally, in the fifth step, the ALJ determines whether plaintiff could adjust to other work which exists in the national economy, considering factors such as age, education, and work experience. If so, plaintiff is not disabled. 20 C.F.R. § 416.920(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that plaintiff could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

## C. ALJ's Determination

The ALJ found the first and second steps in plaintiff's favor, noting that she has not

9

engaged in substantial gainful activity since filing her application and that she has severe impairments including degenerative disc disease of the lumbar and cervical spine with multi-level bulges and radiculopathy, diabetes mellitus,[4] and hypertension. (A.R. 14.) Turning to the third step, the ALJ found against plaintiff, stating that her impairments did not meet or medically equal the requirements of a listed impairment. (A.R. 15.) The fourth step was resolved against plaintiff based on the ALJ's finding that she retained a residual functional capacity to perform sedentary work and could perform past relevant work. (A.R. 15–18.) Finally, under the fifth step, the ALJ determined, relying on testimony from a vocational expert, that plaintiff had transferable skills to perform other sedentary work. (A.R. 18.) Therefore, the ALJ determined that plaintiff was not disabled and denied her request for disability insurance benefits. (*Id.*)

**D.     Analysis**

The Commissioner moves for judgment on the pleadings, seeking affirmation of the denial of benefits on grounds that the ALJ applied the correct legal standards to determine that plaintiff was not disabled, and that the ALJ's factual findings are supported by substantial evidence. Plaintiff opposes the motion and cross-moves for judgment on the pleadings on the ground that the ALJ's determinations are not supported by substantial evidence. The court finds that the ALJ's findings are supported by substantial evidence and therefore affirms the ALJ's decision to deny plaintiff disability insurance benefits.

**1.     Impairment Meets or Equals Appendix Listing 1.04**

Under the third step of the five-step analysis, plaintiff is disabled if her impairments meet or equal an impairment listed in Appendix 1. 20 C.F.R. § 416.920(d). Plaintiff argues that her

---

[4] It is undisputed that plaintiff suffers from diabetes mellitus. However, plaintiff does not argue that this condition adds to her disability, and therefore, the court need not discuss this condition herein.

10

spinal disorder meets or equals Section 1.04, which states:

> 1.04 *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral facture), resulting in compromise of a nerve root (including the caude equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> >
> > B. Spinal arachnoiditis confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesis, resulting in the need for changes in position or posture more than once every 2 hours; or
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b

20 C.F.R. Part 404, Subpt P., App. 1 §1.04.

Plaintiff contends that her medical records support a determination that she has a herniated disc resulting in compression of the root nerve, along with limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and a positive straight leg test. MRIs conducted in October 2005 and January 2006, reveal disc herniation. Dr. Gibb's medical records indicate restrictive motion of the spine, and other medical records also report positive straight leg tests. The commissioner responds that the record does not establish limitation of the spine, motor loss, or nerve root compression, and that her reflexes were intact and within normal limits. Finally, the commissioner relies on Dr. Hudak's opinion that plaintiff exhibited no objective findings to confirm any disability.

Plaintiff's medical records indicate a possibility of disability under Section 1.04 in the immediate aftermath of her accident. Her MRI results in October 2005 and January 2006 indicate that she was suffering from disc herniation with mild to general bulging. (A.R. 168–74.) Dr. Gibb's medical reports from 2005 to 2007 also indicate that plaintiff had limitation of motion in the spine as well as tenderness and decreased sensation. (A.R. 159–77.) Additionally plaintiff had numerous positive straight leg tests, and Dr. Gibb's medical reports consistently indicate that plaintiff is "disabled from her job description." (*Id.*) However, it appears from Dr. Gibbs' medical records that plaintiff's condition had improved by August 2007. His physical capacities evaluation, dated August 14, 2007, notes that, "at one time," the plaintiff is only able to sit for one hour, and could stand or walk for less than that amount of time. (A.R. 368.) However, during an eight-hour day, plaintiff would be able to sit for six hours, stand for two hours, and walk for one hour. (*Id.*) This determination indicates that, even if plaintiff was *per se* disabled under Section 1.04 in October 2005, she was no longer disabled by August 2007. Therefore, the court finds that the ALJ correctly determined that plaintiff was not disabled under Section 1.04 of Appendix 1.

  **2. Residual Functional Capacity (or Credibility)**

The ALJ also determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. (A.R. 15.) RFC is the most that a person can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). "Since symptoms sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," it becomes necessary to take other evidence into account, including factors such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 CFR 404.1529(c)(3).

Plaintiff argues that the ALJ failed to take these factors into account when determining her RFC. She complains that the ALJ considered only her appearance at the hearing and her home activities, which she believes do not support a determination that she retained an RFC to perform sedentary work. She also claims that the ALJ failed to consider her prescriptive pain medication and repeated reports of pain. Conversely, the commissioner argues that the ALJ reviewed plaintiff's subjective complaints and correctly determined that they were not entirely credible. Commissioner argues that the ALJ properly took into account the plaintiff's daily activities in deciding she could perform sedentary work.

"It is the function of [commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant. *Aponte v. Sec'y of Health and Human Serv.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). A court must uphold the ALJ's decision to "discount a claimant's subjective complaints of pain" as long as the Commissioner's findings are supported by substantial evidence. *Id.* Here, the ALJ's determination that the plaintiff retained an RFC to perform sedentary work is supported by substantial evidence. Indeed, it comes directly from plaintiff's treating physician, Dr. William Gibbs, who stated in a report from August 2007 that during an eight-hour day, plaintiff would

actually be able to sit for six hours, stand for two hours and walk for one hour. *See supra* at 12. Dr. Gibb's determination is supported by opinions from several other examining doctors, including Dr. Puri and Dr. Hudak. On July 5, 2006, Dr. Puri stated that although plaintiff could "not lift any heavy weight," "[t]here were no limitations to the claimant's gait or to her activities or daily living." (A.R. 321.) Additionally, Dr. Puri noted that plaintiff was able to rise from a chair without difficulty, did not need help changing for the examination, and was able to get on and off the exam table without any difficulty. (A.R. 318.) His report further indicates that plaintiff did not appear to be in acute distress and did not use any assistive device. (*Id.*) Similarly, on March 22, 2006, Dr. Hudak, found that the plaintiff exhibited no objective findings to support disability and further opined that plaintiff could "return to work in a sedentary position with the ability to stand and sit as necessary." (A.R. 183.) Together, these medical opinions suggest that plaintiff retained an RFC to perform sedentary work.

The ALJ also properly discredited plaintiff's subjective complaints of pain in light of medical records that undermine her credibility and therefore support the ALJ's decision that plaintiff's statements were not "totally credible." (A.R. 17.) As noted above, plaintiff's treating physician opined that plaintiff could, in an eight-hour workday, sit for six hours, stand for two hours, and walk for one hour, a determination that is consistent with determinations from other examining physicians. (A.R. 368, 321, 183.) Furthermore, the ALJ took other factors into account in determining plaintiff's credibility regarding her RFC. The ALJ specifically looked at plaintiff's appearance at the hearing as well as her daily activities. (*Id.*) He observed that plaintiff "was not in any obvious pain or discomfort when walking in or out of the hearing room or while sitting during the course of the hearing." (*Id.*) Although plaintiff carried a cane with her

at the hearing, the ALJ noted that "she did not rely on it when moving and was observed to move quickly." (*Id.*) Plaintiff's daily activities also lend support to the ALJ's decision. From plaintiff's own description, it is clear that despite her injury, she still participates in some daily activities such as cooking, cleaning, and food shopping with the help of her son, and additionally goes to church and manages to use public transportation. (A.R. 57–67.) Lastly, the ALJ asked about plaintiff's pain medication during her hearing. (A.R. 407.) Plaintiff testified that she takes Lyrica for nerve pain and has a prescription for Ultram, but takes Motrin most of the time. (A.R. 407–408.) Therefore, the ALJ had this information available to him when determining the plaintiff's RFC, and properly determined that she could perform sedentary work.

### 3. Past Relevant Work

The fourth step of the disability analysis requires the ALJ to determine whether the claimant is capable of performing past relevant work. 20 C.F.R. § 416.920(e). "[T]he claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original).

The ALJ relied on the VE's testimony about plaintiff's specific job performance, as well as plaintiff's testimony at her hearing, and determined that she performed her job as a purchasing agent at a sedentary level, through the telephone and computer. (A.R. 18.) She did not have go out in the field to deal with the suppliers, or lift more than ten pounds. (A.R. 394–397.) Furthermore, the VE testified that plaintiff had transferable skills including computer skills, telephone contact work, and clerical detail skills that could help her find other sedentary work that would accommodate her physical limitations during an eight-hour workday (A.R. 398.)

15

Throughout the record, plaintiff fails to show that she is unable to perform the duties of her past relevant work. In fact, according to her treating physician, she is able to sit for six hours, stand for two hours, and walk for one hour (A.R. 368), giving her the capability to perform her past job as a purchasing agent in the sedentary manner in which it was performed. Therefore, the court finds that the determination that the plaintiff is capable of performing her past relevant work is proper.

### 4. Treating Physician Rule

A treating source's medical opinion regarding the nature and severity of an impairment is given controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (*citing* 20 C.F.R. 404.1527(d)). When a treating source's opinion is not given controlling weight, the proper weight accorded depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). Additionally, the ALJ must always "give good reasons" in his decision for the weight accorded to a treating source's medical opinion. *Id*. There are, however, certain decisions reserved to the Commissioner. Such decisions include the determination that a plaintiff is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data

indicate disability. A treating physician's statement that the [p]laintiff is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Here, the ALJ properly gives Dr. Gibbs' opinion controlling weight when determining plaintiff's disability under Section 1.04 of Appendix 1 and also when determining plaintiff's residual functional capacity. The ALJ relies heavily Dr. Gibbs' medical reports, especially the physical capacities evaluation from August 2007, in concluding that plaintiff is not *per se* disabled under Section 1.04 and retains a residual functional capacity to perform sedentary work. (A.R. 15–18.) Therefore, the court finds that the ALJ gave the plaintiff's treating physician appropriate controlling weight.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's cross-motion for judgment on the pleadings is denied. The ALJ's decision is affirmed.

SO ORDERED

DATED:    Brooklyn, New York
            March 22, 2010

                                                _____/s/_____
                                                      DORA L. IRIZARRY
                                           United States District Judge